

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ROMAK USA, INC., a Kansas Corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MARC RICH<br><br>and<br><br>MARC RICH & CO. HOLDING GMBH, a Swiss Corporation, formerly known as, MARC RICH & CO. HOLDING AG,<br><br>　　　　Defendants. | Case No.:<br><br>01-1080-CV-W-2 |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff Romak USA, Inc., a Kansas Corporation ("Romak USA") and states and alleges as follows:

### FACTS COMMON TO ALL COUNTS

1. Romak USA is a Kansas Corporation whose principal place of business is Kansas City, Missouri.

2. Marc Rich is a resident of Zug, Switzerland, and a citizen of Israel.

3. Marc Rich & Co. Holding GMBH, formerly known Marc Rich & Co. Holding AG ("Rich & Co. Holding") is a Swiss Corporation whose principal place of business is Zug, Switzerland.

01-361861.02

4. This matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between a citizen of the State of Missouri and citizens of the foreign States of Switzerland and Israel. Therefore, this Court has diversity jurisdiction of this matter pursuant to 28 U.S.C. § 1332.

5. Defendant Marc Rich, in his individual capacity, and Defendant Rich & Co. Holding, through the actions of its agents Marc Rich and Thomas Frances Gleeson ("Gleeson"), committed tortious acts and fraud within the State of Missouri against Romak USA. Therefore, this Court has personal jurisdiction over Marc Rich and Rich & Co. Holding.

6. A substantial part of the events giving rise to the causes of action alleged herein occurred in Kansas City, Missouri. Therefore, venue in this Court is appropriate pursuant to 28 U.S.C. § 1391(a)(2) and (3).

7. In May of 1997, Romak, SA, a Swiss Corporation and the parent company and sole shareholder of Romak USA, began negotiating with Marc Rich, individually, and Rich & Co. Holding for the sale of Romak, SA and its various subsidiaries, including Romak USA, to Rich & Co. Holding.

8. Romak, SA and Marc Rich individually, and Rich & Co. Holding agreed that Marc Rich individually, and Rich & Co. Holding could conduct a due diligence examination to determine whether Romak, SA and its subsidiaries, including Romak USA, would be candidates for acquisition by Rich & Co. Holding.

9. The due diligence agreement discussed in paragraph 8 specifically provided that any direct contact by Marc Rich, individually, and Rich & Co. Holding with people employed by Romak, SA and its subsidiaries, including Romak USA, would be for the sole purpose of

conducting the due diligence examination to determine whether Romak, SA and its subsidiaries, including Romak USA, would be candidates for acquisition by Rich & Co. Holding.

## COUNT I

### (FRAUDULENT MISREPRESENTATION)

10. Romak USA incorporates the allegations contained in paragraphs 1-9 as if fully set forth herein.

11. During August and September of 1997, while the negotiations for the acquisition of Romak SA and its subsidiaries, including Romak USA, were still pending, and Marc Rich, individually, and Rich & Co. Holding were still conducting their due diligence examination, Marc Rich, individually, and Rich & Co. Holding, through its agents Marc Rich and Gleeson, made false material representations to Romak USA which included, but were not necessarily limited to, the following:

    a. Represented to officers and directors of Romak USA that Marc Rich, individually, and Rich & Co. Holding had reached an agreement with Romak, SA regarding an asset buyout of Romak USA by Rich & Co. Holding;

    b. Represented to officers and directors of Romak USA that Milan Sladek ("Sladek"), Romak, SA's president, had authorized the liquidation and winding up of the affairs of Romak USA for purposes of accomplishing the purported asset buyout;

    c. Represented to officers and directors of Romak USA that Sladek and/or Romak, SA had authorized Romak USA's employees, including its officers and directors, to talk to Marc Rich, individually, and Rich & Co. Holding about employment with Rich & Co. Holding; and

d. Represented to officers and directors of Romak USA that Sladek and/or Romak, SA had authorized Romak USA's employees, including its officers and directors, to divert Romak USA's business to Rich & Co.

12. Marc Rich individually, and Rich & Co. Holding, through its agents Marc Rich and Gleeson, knew the representations set forth in paragraph 11 were false.

13. Marc Rich individually, and Rich & Co. Holding, through its agents Marc Rich and Gleeson, intended the representations set forth in paragraph 11 to be acted upon in the manner described below in paragraph 15.

14. Romak USA was ignorant of the falsity of the representations set forth in paragraph 11.

15. Romak USA reasonably relied on the representations set forth in paragraph 11, and, as a direct and proximate cause thereof, Romak USA was injured as follows:

   a. The directors and officers of Romak USA understood the company to be in a liquidation phase and did not make efforts themselves, nor did they encourage other employees, to do new business for Romak USA. Rather, from and after the representations, the directors and officers of Romak USA began liquidating the company;

   b. The directors and officers of Romak USA terminated their employment, as well as that of other employees, with Romak USA;

   c. The employees of Romak USA, including its directors and officers, discussed the prospect of employment with Rich & Co. Holding, which lead to some of Romak USA's key employees leaving Romak USA to be employed by Rich & Co. Holding;

d. The employees of Romak USA, including its directors and officers, caused Romak USA's business to be diverted to Rich & Co. Holding; and

e. The directors and officers of Romak USA caused the company to cease functioning.

16. As direct and proximate result of the foregoing, Romak USA suffered the following damages:

a. Romak USA lost its yearly profit of at least $1.5 million from and after October 1, 1997. The total amount of these lost profits will be proven at trial, and will account for not less than a yearly profit of $1.5 million for 10 years; and

b. Romak USA was left unable to be sold to Rich & Co. Holding at Romak USA's net asset value of approximately $1,900,000.00 as contemplated by the negotiations between Romak, SA and Marc Rich, individually, and Rich & Co. Holding, and Romak USA was left unable to be sold to anyone else at Romak USA's net asset value of approximately $1,900,000.

17. Marc Rich, individually, and Rich & Co. Holding, through Marc Rich and Gleeson, engaged in the above described actions wantonly, willfully and/or outrageously and with reckless disregard for the consequences of these acts. Therefore, Marc Rich, individually, and Rich & Co. Holding should be punished for their actions with punitive damages.

## COUNT II

### (CIVIL CONSPIRACY TO COMMIT FRAUDULENT MISREPRESENTATION)

18. Romak USA incorporates the allegations contained in paragraphs 1-17 as if fully set forth herein.

19. Marc Rich, individually, and Rich & Co. Holding, with an unlawful objective in mind, had a meeting of the minds to engage in the pattern of fraudulent misrepresentation activity described in paragraphs 11-17.

20. After reaching the meeting of the minds described in paragraph 19, Marc Rich, individually, and Rich & Co. Holding, through its agents Marc Rich and Gleeson, made the false material representations described in paragraphs 11-13 in furtherance of the conspiracy.

21. As a direct and proximate result of the civil conspiracy to commit fraudulent misrepresentation between Marc Rich, individually, and Rich & Co. Holding, Romak USA was injured and damaged as described in paragraphs 15-16.

## COUNT III

### (TORTIOUS INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP)

22. Romak USA incorporates the allegations contained in paragraphs 1-21 as if fully set forth herein.

23. Romak USA had contracts with its employees, including its directors and officers, under which these employees agreed to devote all of their energies to developing grain trading business for Romak USA.

24. Marc Rich, individually, and Rich & Co. Holding had knowledge of the contract between Romak USA and Romak, SA, and Romak USA and its employees, including its directors and officers.

25. During August and September of 1997, while the negotiations for the acquisition of Romak SA and its subsidiaries, including Romak USA, were still pending, and Marc Rich, individually, and Rich & Co. Holding were still conducting their due diligence examination, Marc Rich, individually, and Rich & Co. Holding, through its agents Marc Rich and Gleeson,

induced and/or caused Romak USA's employees, including its directors and officers, to breach their contracts with Romak USA, by the following intentional interference:

    a.    Making the false material representation to Romak USA's directors and officers that Marc Rich, individually, and Rich & Co. Holding had reached an agreement with Romak, SA regarding an asset buyout of Romak USA by Rich & Co. Holding;

    b.    Making the false material representation to Romak USA's directors and officers that Sladek had authorized the liquidation and winding up of the affairs of Romak USA for purposes of accomplishing the purported asset buyout;

    c.    Making the false material representation to Romak USA's directors and officers that Sladek and/or Romak, SA had authorized Romak USA's employees, including its officers and directors, to talk to Marc Rich, individually, and Rich & Co. Holding about accepting employment with Rich & Co. Holding;

    d.    Making the false material representation to Romak USA's directors and officers that Sladek and/or Romak, SA had authorized Romak USA's employees, including its officers and directors, to divert Romak USA's business to Rich & Co. Holding;

    e.    Breaching the due diligence agreement discussed in paragraphs 8 and 9 by discussing with Romak USA's employees, including its directors and officers, the prospect of employment with Rich & Co. Holding, thereby, inducing some of Romak USA's key employees to leave Romak USA to be employed by Rich & Co. Holding; and

    f.    Breaching the due diligence agreement discussed in paragraphs 8 and 9 by discussing with Romak USA's employees, including its directors and officers, the prospect of diverting Romak USA's business to Rich & Co. Holding, thereby, inducing

01-361861.02

7

Romak USA's employees, including its directors and officers, to divert Romak USA's business to Rich & Co. Holding.

26. As a direct and proximate cause of the false material representations and breaches of the due diligence agreement discussed in paragraphs 8 and 9 set forth in paragraph 25, the following events occurred resulting in breaches of the contracts between Romak USA and its employees, including its directors and officers:

    a. The directors and officers of Romak USA understood the company to be in a liquidation phase and did not make efforts themselves, nor did they encourage other employees, to do new business for Romak USA. Rather, from and after the representations, the directors and officers of Romak USA began liquidating the company;

    b. The directors and officers of Romak USA terminated their employment, as well as that of other employees, with Romak USA;

    c. The employees of Romak USA, including its directors and officers, discussed the prospect of employment with Rich & Co. Holding, which lead to some of Romak USA's key employees leaving Romak USA to be employed by Rich & Co. Holding;

    d. The employees of Romak USA, including its directors and officers, caused Romak USA's business to be diverted to Rich & Co. Holding; and

    e. The directors and officers of Romak USA caused the company to cease functioning.

27. Marc Rich, individually, and Rich & Co. Holding's above-described actions were without justification, as they employed improper means in seeking to further only their own interests.

01-361861.02

28. As a direct and proximate result of the foregoing, Romak USA suffered the following damages:

   a. Romak USA lost its yearly profit of at least $1.5 million from and after October 1, 1997. The total amount of these lost profits will be proven at trial, and will account for not less than a yearly profit of $1.5 million for 10 years; and

   b. Romak USA was left unable to be sold to Rich & Co. Holding at Romak USA's net asset value of approximately $1,900,000.00, as contemplated by the negotiations between Romak, SA and Marc Rich, individually, and Rich & Co. Holding, and Romak USA was left unable to be sold to anyone else at Romak USA's net asset value of approximately $1,900,000.00.

29. Marc Rich, individually, and Rich & Co. Holding, through Marc Rich and Gleeson, engaged in the above-described actions wantonly, willfully and/or outrageously and with reckless disregard for the consequences of these acts. Therefore, Marc Rich, individually, and Rich & Co. Holding should be punished for their actions with punitive damages.

## COUNT IV

### (CIVIL CONSPIRACY TO COMMIT TORTIOUS INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP)

30. Romak USA incorporates the allegations contained in paragraphs 1-29 as if fully set forth herein.

31. Marc Rich, individually, and Rich & Co. Holding, with an unlawful objective in mind, had a meeting of the minds to engage in the pattern of tortious activity described in paragraphs 24-27.

32. After reaching the meeting of the minds described in paragraph 31, Marc Rich, individually, and Rich & Co. Holding, through its agents Marc Rich and Gleeson, engaged in the activity described in paragraphs 25-27 in furtherance of the conspiracy.

33. As a direct and proximate result of the civil conspiracy between Marc Rich, individually, and Rich & Co. Holding to commit tortious interference with a contractual relationship, Romak USA was injured and damaged as described in paragraphs 26 and 28.

## COUNT V
### (TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP)

34. Romak USA incorporates the allegations contained in paragraphs 1-33 as if fully set forth herein.

35. Romak USA had a valid business relationship with and reasonable expectation of economic advantage or commercial relations with its employees, including its officers and directors, and its customers with respect to developing a successful grain trading business in the United States.

36. Marc Rich, individually, and Rich & Co. Holding had knowledge of Romak USA's valid business relationship and expectancy described in paragraph 35.

37. During August and September of 1997, while the negotiations for the acquisition of Romak SA and its subsidiaries, including Romak USA, were still pending, and Marc Rich, individually, and Rich & Co. Holding were still conducting their due diligence examination, Marc Rich, individually, and Rich & Co. Holding, through its agents Marc Rich and Gleeson, induced and/or caused a breach of the valid business relationship and expectancy Romak USA had with its employees, including officers and directors, and its customers by the following intentional interference:

a. Making the false material representation to Romak USA's directors and officers that Marc Rich, individually, and Rich & Co. Holding had reached an agreement with Romak, SA regarding an asset buyout of Romak USA by Rich & Co. Holding;

b. Making the false material representation to Romak USA's directors and officers that Sladek had authorized the liquidation and winding up of the affairs of Romak USA for purposes of accomplishing the purported asset buyout;

c. Making the false material representation to Romak USA's directors and officers that Sladek and/or Romak, SA had authorized Romak USA's employees, including its officers and directors, to talk to Marc Rich, individually, and Rich & Co. Holding about employment with Rich & Co. Holding;

d. Making the false material representation to Romak USA's directors and officers that Sladek and/or Romak, SA had authorized Romak USA's employees, including its officers and directors, to divert Romak USA's business to Rich & Co. Holding;

e. Breaching the due diligence agreement discussed in paragraphs 8 and 9 by discussing with Romak USA's employees, including its directors and officers, the prospect of employment with Rich & Co. Holding, thereby, inducing some of Romak USA's key employees to leave Romak USA to be employed by Rich & Co. Holding; and

f. Breaching the due diligence agreement discussed in paragraphs 8 and 9 by discussing with Romak USA's employees, including its directors and officers, the prospect of diverting Romak USA's business to Rich & Co. Holding, thereby, inducing Romak USA's employees, including its directors and officers, to divert Romak USA's business to Rich & Co. Holding.

01-361861.02

11

38. As a direct and proximate cause of the false material representations and breaches of the due diligence agreement discussed in paragraphs 8 and 9 set forth in paragraph 37, the following events occurred resulting in breaches of the valid business relationship and expectancy Romak USA had with its employees, including its officers and directors, and its customers:

    a. The directors and officers of Romak USA understood the company to be in a liquidation phase and did not make efforts themselves, nor did they encourage other employees, to do new business for Romak USA. Rather, from and after the representations, the directors and officers of Romak USA began liquidating the company;

    b. The directors and officers of Romak USA terminated their employment, as well as that of other employees, with Romak USA;

    c. The employees of Romak USA, including its directors and officers, discussed the prospect of employment with Rich & Co. Holding, which lead to some of Romak USA's key employees leaving Romak USA to be employed by Rich & Co. Holding;

    d. The employees of Romak USA, including its directors and officers, caused Romak USA's business to be diverted to Rich & Co. Holding; and

    e. The directors and officers of Romak USA caused the company to cease functioning.

39. Marc Rich, individually, and Rich & Co. Holding's above-described actions were without justification, as they employed improper means in seeking to further only their own interests.

40. As a direct and proximate result of the foregoing, Romak USA suffered the following damages:

01-361861.02

a. Romak USA lost its yearly profit of at least $1.5 million from and after October 1, 1997. The total amount of these lost profits will be proven at trial, and will account for not less than a yearly profit of $1.5 million for 10 years; and

b. Romak USA was left unable to be sold to Rich & Co. Holding at Romak USA's net asset value of approximately $1,900,000.00 as contemplated by the negotiations between Romak, SA and Marc Rich, individually, and Rich & Co. Holding, and Romak USA was left unable to be sold to anyone else at Romak USA's net asset value of approximately $1,900,000.00; and

41. Marc Rich, individually, and Rich & Co. Holding, through Marc Rich and Gleeson, engaged in the above-described actions wantonly, willfully and/or outrageously and with reckless disregard for the consequences of these acts. Therefore, Marc Rich, individually, and Rich & Co. Holding should be punished for their actions with punitive damages.

## COUNT VI

### (CIVIL CONSPIRACY TO COMMIT TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP)

42. Romak USA incorporates the allegations contained in paragraphs 1-41 as if fully set forth herein.

43. Marc Rich, individually, and Rich & Co. Holding, with an unlawful objective in mind, had a meeting of the minds to engage in the pattern of tortious activity described in paragraphs 36-39.

44. After reaching the meeting of the minds described in paragraph 43, Marc Rich, individually, and Rich & Co. Holding, through its agents Marc Rich and Gleeson, engaged in the activity described in paragraphs 37-39 in furtherance of the conspiracy.

45. As a direct and proximate result of the civil conspiracy between Marc Rich, individually, and Rich & Co. Holding to commit tortious interference with a business relationship, Romak USA was injured and damaged as described in paragraphs 38 and 40.

WHEREFORE Romak USA prays for judgment jointly and severally against Marc Rich, individually, and Rich & Co. Holding as follows:

    a. Lost profits to be proven at trial which will include at least $1.5 million per year from and after October 1, 1997 extending for a period of at least 10 years;

    b. The approximate amount of $1,900,000.00 Romak USA lost after it was left unable to be sold to Rich & Co. Holding at Romak USA's net asset value as contemplated by the negotiations between Romak, SA and Marc Rich, individually, and Rich & Co. Holding, and after Romak USA was left unable to be sold to anyone else at Romak USA's net asset value; and

    c. Punitive damages.

## DEMAND FOR JURY TRIAL

Romak USA, Inc., a Kansas corporation, demands that the above-captioned matter and all issues raised therein be tried to a jury in Kansas City, Missouri.

Dated this 4th day of October, 2001.

        ROMAK USA, INC., a Kansas Corporation,
        Plaintiff,

By *[signature: Gregory Hanks]*
    Gregory Hanks          #48356
    Leslie A. Greathouse    #48431
    Kutak Rock LLP
    Suite 200, Valencia Place
    444 West 47th Street
    Kansas City, MO 64112-1914
    (816) 960-0090 (Telephone)
    (816) 960-0041 (Facsimile)

and

    Robert M. Slovek      NE #17798
    Kutak Rock LLP
    The Omaha Building
    1650 Farnam Street
    Omaha, NE 68102-2186
    (402) 346-6000 (Telephone)
    (402) 346-1148 (Facsimile)