IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI, AT KANSAS CITY

| | |
|---|---|
| ROMAK USA, INC.<br>One Main Plaza<br>Suite 810<br>4435 Main Street<br>Kansas City, MO 64111-7727<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>R. STEPHEN WILDE<br>13008 Catalina Street<br>Leawood, Kansas 66209,<br><br>ALBERT M. CONWAY<br>11601 East 211th Street<br>Peculiar, Missouri 64078,<br><br>　　AND<br><br>PAUL J. FRICK<br>15006 Hardesty<br>Overland Park, Kansas 66223<br><br>　　　　Defendants. | No. 98-CV-6363<br><br>Division 15 |

## FIRST AMENDED PETITION
## FOR BREACH OF FIDUCIARY DUTY, BREACH OF EMPLOYEE
## DUTY OF LOYALTY, CONSPIRACY TO BREACH FIDUCIARY DUTY AND DUTY
## OF LOYALTY, ACCOUNTING, AND PUNITIVE DAMAGES (8113, 8199 AND 8999)

COMES NOW Romak USA, Inc. ("Romak USA"), plaintiff, a corporation organized under the laws of Kansas, by and through its counsel, and, in response to the Order entered June 9, 1998 in the above-captioned case, respectfully submits its First Amended Petition and states and alleges as follows:

11-4692.1

## PARTIES

1. R. Stephen Wilde ("Wilde") is a resident of Johnson County, Kansas.

2. Albert M. Conway ("Conway") is a resident of Cass County, Missouri.

3. Paul J. Frick ("Frick") is a resident of Johnson County, Kansas.

4. Romak USA is a Corporation duly organized and existing under the laws of the state of Kansas, with its most recent principal place of business at 4800 Main Street, Suite 501, Kansas City, Missouri; Romak USA held at all times relevant to the facts alleged in this petition and holds a certificate of authority to transact business in the State of Missouri as a foreign corporation.

## FACTS AND BACKGROUND

5. Since the date of its incorporation on or about November 20, 1995, Romak USA was engaged in the business of buying and selling grain in the domestic and international markets. Although Romak USA continues to exist as a Kansas corporation, Romak USA ceased buying and selling grain in the domestic and international markets on or about October 6, 1997 with the exception of liquidating its open positions.

6. Wilde was a member of Romak USA's board of directors and was president of Romak USA from November 27, 1995, until October 6, 1997.

7. Conway was a member of Romak USA's board of directors and was vice-president of Romak USA from November 27, 1995 until October 6, 1997.

8. Romak SA, a corporation organized under the laws of the country of Switzerland, has been the sole shareholder of Romak USA since the date of Romak USA's incorporation.

11-4692.1

9. Romak USA was incorporated by Wilde pursuant to an agreement between Wilde and Romak SA whereby Wilde agreed to create a corporate entity that would trade grain in the United States and internationally under the name Romak USA. Pursuant to this agreement, Romak SA, Romak USA's sole shareholder, agreed to provide all of the initial capitalization for Romak USA.

10. On or about November 27, 1995, Romak SA, as Romak USA's sole shareholder, appointed Wilde, Conway, and Walter Troisch ("Troisch"), Romak SA's representative, to the board of directors of Romak USA. Wilde, Conway and Troisch remained directors until they were removed by Romak SA, the sole shareholder, on October 6, 1997.

11. In May 1997, Wilde spoke with Dr. Milan Sladek ("Dr. Sladek"), the majority shareholder of Romak SA, which was the guarantor of credit and sole shareholder of Romak USA, and discussed financial difficulties that Romak SA was having due to a default on a large grain trade it had entered. During that conversation, Wilde and Dr. Sladek discussed the possibility of Romak SA selling Romak USA.

12. After Wilde's conversation with Dr. Sladek, Wilde called a special meeting of Romak USA's board of directors to be held May 23, 1997 ("May Board Meeting"), notice of which was delivered by facsimile and mail ("Notice") to Troisch in Geneva, Switzerland, on May 21, 1997, just two days before the May Board Meeting was to take place.

13. The Notice provided only a vague identification of the May Board Meeting's agenda. Specifically, the Notice stated that the board of directors would address "various 401-K and employment issues." A true and correct copy of the Notice is attached hereto as Exhibit A and is incorporated herein by reference.

14. Section 4 of Romak USA's bylaws provides that special meetings of the board of directors may be held with notice of not less than 10 days and not more than 50 days provided in writing to each director and delivered either personally or by mail. A true and correct copy of the bylaws which were effective from November 27, 1995 until October 6, 1997, is attached hereto as Exhibit B, and incorporated herein by reference.

15. Romak USA's bylaws further provide that the board of directors can take an action without a meeting only upon the written consent of all directors. Exhibit B, § 8.

16. On or about May 23, 1997, Wilde and Conway, then constituting a majority of the board of directors of Romak USA, and being in control of the corporation, held the May Board Meeting. Because Troisch was provided notice only two days before the May Board Meeting, Troisch, who resided in Geneva, Switzerland, was unable to attend the May Board Meeting.

17. Without proper notice to Troisch and without Troisch's written consent, Wilde and Conway declared a quorum at the May Board Meeting and authorized the issuance of employee agreements with severance clauses for all Romak USA employees ("Employee Agreements"), including Wilde, Conway, Frick, Dianne Hartline ("Hartline") and Diane Bailes ("Bailes"). A copy of each of the Employee Agreements between Romak USA and Wilde, Conway, Frick, Hartline and Bailes are attached hereto as Exhibits C, D, E, F, and G respectively and incorporated herein by reference.

18. The Employment Agreements that Wilde and Conway improperly approved provided monetary cash disbursements of up to 200% of each employee's annual salary upon termination of the employee without cause. The Employment Agreements defined "without cause" to include, but not be limited to (a) dissolution of Romak USA; (b) reorganization of

Romak USA; (c) job elimination; (d) economic downturns; (e) lack of work; and (g) inability of Romak USA to continue its trading operations.

19. During the May Board Meeting, Wilde and Conway also passed a resolution vesting all employee 401K plans as of June 1, 1997. This resolution was passed without Wilde or Conway providing proper notice of the meeting to Troisch and without obtaining Troisch's consent.

20. Wilde and Conway each signed a written consent to Action of Board of Directors on or about May 23, 1997. This written consent to Action of Board of Directors was never signed by Troisch.

21. Wilde and Conway attempted to conceal and otherwise failed to disclose the contents of the Employment Agreements to Romak SA. Romak SA and/or Dr. Sladek made several requests to Romak USA, Wilde and/or Conway in June and July 1997 to assist in an audit of Romak USA to be conducted by Ernst & Young, the auditors for Romak USA. Wilde and/or Conway failed to provide and/or postponed providing the requested assistance contrary to the requests of Romak SA and Dr. Sladek. Wilde and Hartline executed a letter on or about July 17, 1997 to Ernst & Young ("July 17, 1997 Letter") stating that Romak USA's financial position had not changed since June 30, 1997 and that there were no transactions or events that would have a material effect on Romak USA's financial statements or that were of such significance in relation to Romak USA's affairs as would require mention in the financial statements in order to make those statements not misleading regarding financial position, results of operations or cash flows. As of the date of drafting of the July 17, 1997 Letter, neither Wilde nor Conway had sought authorization from Romak SA to shut down Romak USA or had informed Romak SA or Ernst & Young that Wilde and Conway intended to shut down Romak USA.

22. On or about May 28, 1997, Wilde sent a memorandum to Dr. Sladek which stated that Romak USA's business had greatly suffered as a result of Romak SA's financial difficulties. It is believed that Wilde's statements about Romak USA's business affairs were untrue, as Romak USA continued to do business and to trade grain despite Romak SA's financial difficulties.

23. On or about July 25, 1997 Wilde wrote to Dr. Sladek recommending that Romak USA be liquidated, again stating that Romak USA's position in the marketplace was deteriorating and that Romak USA could no longer continue operating. Upon information and belief, these statements were untrue, as Romak USA was in a position to continue, and in fact did continue, doing business and negotiating grain deals despite Romak SA's financial difficulties.

24. On or about August 27, 1997 Wilde issued a memorandum to the employees of Romak USA stating that Romak USA could no longer operate. This memorandum further ordered a gradual and orderly shutdown of Romak USA even though Romak SA had specifically told Wilde to continue operating Romak USA and not to take steps to liquidate the company.

25. On or before May, 1997, Wilde and Conway became aware that Romak SA had been discussing the possibility of selling Romak USA to potential purchasers. In or about June, 1997, Wilde and Conway became aware that Marc Rich Group ("MRG"), an international trading company that was in direct competition with Romak USA and Romak SA, was at that time actively negotiating with Romak SA to purchase all the shares of Romak USA and to take over Romak USA's business.

26. On or before September 15, 1997, Wilde, with the knowledge of Conway and Frick and in defiance of Romak SA's express orders, began negotiating with MRG and/or Glibro SA, another international grain trading company in competition with Romak USA which had

been acquired by MRG, to act as president of a new American division of MRG. This American division was to conduct the same kind of business as that being conducted by Romak USA.

27. On September 15, 1997, Wilde notified Frick that his employment with Romak USA had been terminated effective immediately. Frick, who had been one of Romak USA's grain traders, thereafter immediately began negotiating grain trades for MRG and/or Glibro, and competing directly against Romak USA. In fact, on the same date as his "termination," Frick made an offer to sell a certain quantity of wheat on Glibro's behalf to Noorani Flour Mills, one of Romak USA's long-standing clients.

28. Upon information and belief, the negotiations leading up to Frick's wheat tender offer to Noorani were conducted by Frick, Wilde and/or Conway on Romak USA's behalf before September 15, 1997, but that the benefit of this business opportunity was diverted from Romak USA and to MRG, Glibro and/or Navarco Agriculture, Inc. ("Navarco"), at Wilde's, Conway's and Frick's direction, knowledge and consent. Upon further information and belief, Wilde, Conway and Frick may have diverted several other business transactions from Romak USA in substantially the same manner.

29. Upon information and belief, from September 15, 1997, until October 6, 1997, Frick acting under the direction and consent of Wilde and with the consent and knowledge of Conway continued to work at his desk at Romak USA, but to trade for Glibro and/or MRG and to compete directly against Romak USA by using Romak USA's facilities, desks, phones, computers and all other facilities and resources provided by Romak USA.

30. On or about September 18, 1997, and pursuant to the terms of Frick's Employment Agreement which was improperly executed on May 23, 1997 without Troisch's consent, Wilde, with the knowledge and consent of Conway, ordered Romak USA to issue a

check to Frick in the amount of $71,610. This payment represented a severance bonus for Frick's personal use and benefit.

31. On or about September 25, 1997, Wilde, without approval of Romak USA's board of directors, and without shareholder resolution, wrote letters to himself, Conway and Hartline, notifying them that their employment had been terminated, but that each would remain working as employees at Romak USA until the corporation was liquidated. Thereafter, Wilde and Conway continued operating Romak USA and Glibro at the same time, and out of Romak USA's office, with the express purpose of liquidating Romak USA without approval from Romak USA's shareholder or board of directors.

32. On or about September 14, 1997, and pursuant to the terms of Bailes' Employment Agreement which was improperly executed on May 23, 1997 without Troisch's consent, Wilde, with Conway's knowledge and consent, ordered Romak USA to issue a check to Bailes payable for the sum of $13,085. Part of this payment represented a severance bonus for Bailes' personal use and benefit.

33. On or about September 25, 1997, and pursuant to the terms of Hartline's Employment Agreement which was improperly executed on May 23, 1997 without Troisch's consent, Wilde, with Conway's knowledge and consent, had Romak USA issue a check to Hartline payable for the sum of $45,675. This payment represented a severance bonus for Hartline's personal use and benefit.

34. On or about September 25, 1997, and pursuant to the terms of his Employment Agreement which was improperly executed on May 23, 1997 without Troisch's consent, Wilde directed Romak USA to issue a check to himself payable for the sum of $252,000. This payment represented a severance bonus for Wilde's personal use and benefit.

35. On or about October 1, 1997, and pursuant to the terms of his Employment Agreement which was improperly executed on May 23, 1997 without Troisch's consent, Romak USA transferred to Conway a sum of $264,600. This payment represented a severance bonus for Conway's personal use and benefit.

36. After September 25, 1997, and until Romak SA, the sole shareholder, removed him from the board of directors on October 6, 1997, Wilde continued to operate Romak USA and to hold himself out as a director and president of Romak USA.

37. After September 25, 1997, and until Romak SA, the sole shareholder, removed him from the board of directors and as vice president of Romak USA on October 6, 1997, Conway continued to act as a director and vice president of Romak USA and to conduct business out of Romak USA's office.

38. Sometime after May, 1997, and before the date of commencement of this action, Wilde, without knowledge or consent of Romak USA, and with the acquiescence and approval of Conway, formed a new company with MRG and/or Glibro to operate the same business as Romak USA.

39. Wilde, Conway and Frick incorporated and are now operating Navarco, which, upon information and belief, is either owned or operated by MRG or an MRG affiliate and operates as the American division of MRG.

40. On or before being removed as Romak USA officers and directors on October 6, 1997, Wilde, Conway and Frick took corporate opportunities available to Romak USA for Glibro, MRG and/or Navarco and used Romak USA employees to work for Glibro and to compete directly against Romak USA. Expenses including travel, phones, paper, computers, on-line networks, office space, secretary and clerical support, and other overhead expenses were

paid for by Romak USA, but inured to the benefit of Wilde, Conway, Glibro, MRG and/or Navarco.

41. Romak USA had an extensive business until Wilde, Conway and Frick began dissipating and wrongfully diverting the assets and business of Romak USA to themselves, Glibro and/or Navarco. These actions caused Romak USA to lose business and good will, caused the value of Romak USA to substantially decrease and caused damages to Romak USA by depriving it of an expected yearly profit of approximately $1.5 million.

42. Wilde's untruthful representations, which were made with the knowledge and consent of Conway and Frick, to Dr. Sladek and Romak SA regarding Romak USA's inability to operate induced Romak SA to continue negotiating to sell Romak USA and to place a value on Romak USA that was lower than its actual value.

43. Wilde's and Conway's actions, which were in derogation of Romak USA's best interests and in furtherance of Wilde's and Conway's own personal interests, precluded Romak SA from selling Romak USA's shares and placed Romak SA in such a position that it had no choice but to sell its remaining assets to MRG at a significantly reduced price.

### COUNT I
### Breach of Fiduciary Duty --
### Against Wilde and Conway (8113/8199)

44. Romak USA realleges Paragraphs 1 through 43 as though fully incorporated herein.

45. At all material times, Wilde and Conway held positions of trust and confidence as employees and corporate officers and directors of Romak USA. Wilde and Conway as officers and directors of Romak USA under the common law and under the Kansas General Corporation

Code owed Romak USA and its sole shareholder, Romak SA, fiduciary duties of care, loyalty and good faith and fair dealing.

46. Wilde and Conway breached their fiduciary duties by:

(a) holding board meetings and passing board resolutions without proper notice to all members of the board and without unanimous written consent of all members of the board;

(b) entering into employee agreements on behalf of Romak USA with themselves, Frick, Hartline and Bailes for salaries, severance bonuses and benefits that were in contravention of Romak USA's best interests and in furtherance of their own personal interests;

(c) entering into employee agreements with employees on behalf of Romak USA that provided excessive severance packages in the event that employees were dismissed without cause, knowing that Romak SA was negotiating for the sale of Romak USA, thus impeding the negotiation efforts of Romak SA and drastically reducing the price per share sale price;

(d) voting for themselves and then dispersing to themselves excessive and improper severance packages of approximately $250,000 each;

(e) usurping corporate opportunities by taking grain deals that they should have negotiated on Romak USA's behalf for the benefit of themselves or other competing companies including Glibro, MRG and/or Navarco;

(f) using Romak USA's assets, equipment and employees to directly compete with Romak USA;

(g) intentionally and negligently damaging the business reputation and good will of Romak USA;

(h) making the arbitrary and unilateral decision to wind-down and liquidate business without approval of Romak USA's board of directors or Romak SA, the sole shareholder of Romak USA.

47. As a proximate result of Wilde and Conway's breach of fiduciary duties to Romak USA, Romak USA has been damaged.

## COUNT II
### Breach of Employee Duty Of Loyalty –
### Against All Defendants (8113/8199)

48. Romak USA realleges Paragraphs 1 through 47 as though fully incorporated herein.

49. As employees of Romak USA, Wilde, Conway and Frick owed a duty of loyalty to Romak USA not to compete directly against Romak USA while still employed by Romak USA.

50. Wilde, Conway and Frick breached their employee duty of loyalty to Romak USA by directly competing against Romak USA while still being employed by Romak USA, and by using Romak USA's assets, equipment and employees, to directly compete against Romak USA.

51. Romak USA has been damaged by Wilde's, Conway's and Frick's breach of their duty of loyalty to Romak USA.

## COUNT III
### Conspiracy to Breach Fiduciary Duty and Duty of Loyalty –
### Against All Defendants (8113/8199)

52. Romak USA realleges paragraphs 1 through 51 above as though fully incorporated herein.

53. Wilde, Conway and Frick together conspired to breach their fiduciary duties and/or duties of loyalty to Romak USA in furtherance of the acts set forth above.

54. Wilde, Conway and Frick unlawfully and with fraudulent intent conspired and connived to wreck Romak USA, despoil it of its assets and dispose of the same to their individual benefit and profit and to the damage of the corporation,

55. As a direct result of the conspiracy of Wilde, Conway and Frick, Romak USA has been damaged.

## COUNT IV
### Accounting --
### Against All Defendants (8999)

56. Romak USA realleges paragraphs 1 through 55 above as though fully incorporated herein.

57. Wilde and Conway as officers, directors and employees of Romak USA owed a fiduciary duty to Romak USA. Frick, as an employee of Romak USA, owed an employee duty of loyalty to Romak USA.

58. Wilde, Conway and Frick have in their possession information relating to grain trading transactions and/or opportunities that arose before termination of their employment with Romak USA and before Wilde and Conway were removed as officers and directors, which were diverted from Romak USA and inured to the benefit of Wilde, Conway, MRG, Glibro and/or Navarco.

59. Romak USA has no means of obtaining information relating to these business transactions or opportunities other than to make Wilde, Conway and Frick account for them. Accordingly, Romak USA has no adequate remedy at law to recover the lost profits and expenses relating to these transactions.

## COUNT V
### Punitive Damages

60. Romak USA realleges paragraphs 1 through 59 above as though fully incorporated herein.

61. Wilde's, Conway's and Frick's actions were willful, wanton, intentional, malicious, in bad faith and carried out with such conscious and reckless disregard for the rights of Romak USA that Romak USA is entitled to punitive damages to punish Wilde, Conway and Frick and to deter such conduct in the future.

WHEREFORE, Romak USA prays for relief as follows:

(a) Monetary damages as are fair and reasonable to compensate Romak USA for the full amounts of monies plus interest taken by Wilde, Conway, Frick, Hartline and Bailes as severance monies.

(b) Monetary damages as are fair and reasonable to compensate Romak USA for lost business opportunities and loss of business good will;

(c) Monetary damages as are fair and reasonable for amounts paid by Romak USA for services and goods supplied to MRG, Glibro and/or Navarco;

(d) Monetary damages as are fair and reasonable for the lost value to and lost profits of Romak USA;

(e) An accounting by Wilde, Conway and Frick as to the information in their possession relating to grain trading transactions and/or opportunities that were unlawfully diverted from Romak USA;

(f) Attorneys fees and costs;

(g) Punitive damages as are fair and reasonable; and

(h)  Such other relief as may be just and equitable.

DATED this 15th day of June, 1998.

ROMAK USA, INC.

Respectfully submitted,

KUTAK ROCK

BY /s/ Gregory Hancks
Gregory Hancks #48356
Robert M. Slovek
Marcia A. Judd
4435 Main Street, Suite 810
Kansas City, MO 64111
(816) 960-0090
Fax (816) 960-0041
ATTORNEYS FOR PLAINTIFF